NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PETER HENRIK PEDERSEN,**
*Appellant*

**v.**

**UNIFIED PATENTS, LLC,**
*Appellee*

---

2024-2090

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2023-00029.

---

Decided:  March 26, 2026

---

ROBERT GREENSPOON, Dunlap Bennett & Ludwig PLLC, Chicago, IL, argued for appellant.  Also represented by WILLIAM W. FLACHSBART, MARK MAGAS; THOMAS MANSFIELD DUNLAP, Vienna, VA.

KELLY ROSE HUGHES, Unified Patents, LLC, Washington, DC, argued for appellee.  Also represented by ROSHAN MANSINGHANI; ALYSSA J. HOLTSLANDER, Chevy Chase, MD.

---

Before LOURIE and HUGHES, *Circuit Judges*, and KLEEH, *Chief District Judge*.[1]

KLEEH, *Chief District Judge*.

Peter Henrik Pedersen appeals from a final written decision of the Patent Trial and Appeal Board in *inter partes* review No. IPR2023-00029, holding claims 1 and 14-17 of U.S. Patent No. 6,965,920 unpatentable as obvious. Because we find that the Board's decision is supported by substantial evidence, we *affirm*.

I

The '920 patent is generally directed to the automatic filtering of electronic messages via preferences provided by users in messenger and recipient profiles. More specifically, the '920 patent discloses a system and method for the central specification and management of how electronic messages received from a plurality of messengers or sources are distributed to individual recipients. '920 patent, col. 2, ll. 46-50. Recipient-users provide recipient profile data via a recipient profile input form. *Id.* at col. 3 ll. 5-12. At issue here on appeal, that data includes "a plurality of messenger specific profiles, each profile indicating delivery parameters for where, when and how specific types of messages from each messenger are to be delivered to the recipient." *Id.* at col. 3, ll. 19-23.

As disclosed in claim 1, upon which claims 14-17 depend, the '920 patent's "electronic message management system" comprises, among other limitations, "a recipient profile application for receiving recipient profile data from recipients via the global network and storing the recipient data in the database, the profile data including delivery

---

[1]    Honorable Thomas S. Kleeh, Chief District Judge, United States District Court for the Northern District of West Virginia, sitting by designation.

parameters specified by a recipient of *where, when and how* specific types of messages *from specific messengers* are delivered to the recipient." '920 patent, col. 11, ll. 26-31 ("limitation 1.4") (emphasis added).

The Board found that the challenged claims would have been obvious to a person of ordinary skill in the art based on Funk[2] in view of either Law[3] or Kamakura[4] (J.A. 51), locating limitation 1.4, at issue here, in Funk (J.A. 31-36, 45). Pedersen appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## II

We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *Rambus Inc. v. Rea*, 731 F.3d 1248, 1251 (Fed. Cir. 2013). A Board's factual finding is "supported by substantial evidence if a 'reasonable mind might accept a particular evidentiary record as adequate to support a conclusion.'" *Airbus S.A.S. v. Firepass Corp.*, 941 F.3d 1374, 1381 (Fed. Cir. 2019) (quoting *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999)) (finding substantial evidence for obviousness even where "the Board's analysis could have been more developed"). Obviousness is a question of law, based on underlying factual findings, including what a reference teaches. *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1047, 1051 (Fed. Cir. 2016) (en banc).

---

[2]    U.S. Patent No. 5,937,162 for "Method and Apparatus for High Volume E-mail Delivery." J.A. 876-913.

[3]    U.S. Patent No. 7,058,586 for "Information Delivery System for Providing Senders with a Recipient's Messaging Preferences" (not included in Joint Appendix).

[4]    U.S. Patent No. 6,047,310 for "Information Disseminating Apparatus for Automatically Delivering Information to Suitable Distributees." J.A. 914-947.

Pedersen argues that the Board failed to identify where Funk discloses the messenger-specific, user-specified delivery parameters of limitation 1.4. Open. Br. 19-24. A patent claim is unpatentable when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).[5] Among other factual determinations, obviousness depends on the scope and content of the prior art and the differences between the prior art and the claims at issue. *In re Kubin*, 561 F.3d 1351, 1355 (Fed. Cir. 2009) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)).

While Pedersen conceded below that "field 806 [of Funk] teaches limitation 'specific types of messages,'" Pedersen argued that Funk "does not teach 'from specific messengers.'" J.A. 347 (Patent Owner Response 28). Now, on appeal, Pedersen contends that the Board's evidence incorrectly relies on Funk's *information-source*-specific delivery parameters as teaching limitation 1.4's *messenger*-specific delivery parameters. Open. Br. 19. We disagree.

As Pedersen notes (Open. Br. 20), the Board located messenger-specific delivery parameters in several portions of Funk, adopting Unified Patents' arguments and its expert's opinions regarding those portions. J.A. 33-34.

---

[5]    Congress amended § 103 when it passed the Leahy-Smith America Invents Act (AIA). *See* Pub. L. No. 112-29, § 3(c), 125 Stat. 284, 287 (2011). However, the pre-AIA § 103 applies here because the application that led to the '920 patent never contained a claim having an effective filing date on or after March 16, 2013, or a reference under 35 U.S.C §§ 120, 121, or 365(c) to any patent or application that ever contained such a claim. *See id.* § 3(n)(1), 125 Stat. at 293.

Pedersen argues that this evidence is insufficient because of differences between Funk's "information sources" and limitation 1.4's "messengers." Open. Br. 19.

We disagree. First, the Board cited Funk's timing processor (704), which "provides flexible, highly configurable customer control over when and what should be delivered to the customer" such that a "customer's account information may indicate that the information *from certain databases* should be delivered periodically (e.g., send a weather report every six hours)." J.A. 33-34 (quoting Funk, col. 10, ll.18-25) (emphasis added); *see also* J.A. 34 (quoting Funk, col. 9, ll.31-33) ("[A] personal configuration file is created containing the information resources that the end-user would like e-mailed to his desktop."). The Board also quoted Dr. Houh's opinion that Funk allows a user to "specify preferences for how types of messages from certain sources [are] received." J.A. 34 (quoting J.A. 798-800 (Dr. Houh's Declaration ¶ 121), which cites Funk, col. 10, ll. 22-25; col. 9, ll. 31-36; col. 10, ll.34-46).

Second, the Board relied on Funk's disclosures relating to third parties, adopting Unified Patents' arguments and evidence to the effect that Funk's inbound e-mail processor 212 allows communication between senders and recipients via a central system as shown in Funk's Figures 1 and 2 and the '920 patent's Figure 4, indicating such information sources are indeed "senders." *Id.* at 34-35 (citing Funk, col. 8, ll. 30-36; col. 9, ll. 4-6). The Board specifically quoted Funk's language that messages "can come from several sources, including third parties" (J.A. 34 (quoting Funk col. 7, ll.6-8)) and Dr. Houh's opinion that "[t]he 'parties' of Funk are senders because they transmit messages to a system that in turn transmits the messages to a system that in turn transmits the messages to recipients including information received from the parties." J.A. 34-35 (citing J.A. 1160, ¶ 7 (Dr. Houh's Supplemental Declaration)).

As a specific example of such a "third-party sender," the Board referred to Funk's Figure 3, which depicts message field 310 as containing the message: "JOHN, PLEASE CALL ME. -DAVE S." J.A. 35. The Board found this example to "directly contradict[] Patent Owner's argument that the prior art lacks a disclosure of 'identification of specific recipients by specific messengers'" *Id.* (quoting J.A. 421-22 (Patent Owner's Sur-Reply)). The Board further rejected Pedersen's argument that Funk lacks "parameters set by recipients identifying specific messages" (*Id.* quoting J.A. 422) on the grounds that "Funk allows its customers to specify that a particular customer wants to hear from a particular information source at a particular interval." *Id.* (citing Funk, col. 10, ll. 18-25).

Though Pedersen presents alternate interpretations of Funk here on appeal, including those based in usages of "messenger" outside of the context of the '920 patent (*see, e.g.*, Open. Br. 22-23), "a reasonable mind might accept" the Board's evidence "as adequate to support" its obviousness conclusion." *Airbus S.A.S.*, 941 F.3d at 1381; *Dickinson*, 527 U.S. at 162. Accordingly, the Board's obviousness conclusion is supported by substantial evidence.

**AFFIRMED**